Good morning and may it please the court. My name is Amit Karilakar and I represent the petitioners in this appeal, Ulysses Francisco Martínez Silva and Saturnina Martínez. I would like to reserve two minutes for rebuttal, so after eight minutes I'd like to... And the clock counts down, right? Yes, thank you. Today the question before the court is whether it has jurisdiction over this appeal. As the court is aware, we have provided what we believe are two independent bases for such jurisdiction. First, that the immigration judge violated the petitioner's due process rights when he failed to neutrally and fairly evaluate the evidence, but instead interjected his own preconceived notions about life in Mexico and about the petitioner's family in contravention of the record evidence. But I know you understand this because we discussed it in your brief, but the reality is when there's this type of a case, you've got the discretion of the IJ involved and of the agency involved. We don't have jurisdiction to hear that unless you present colorable constitutional claims. We probably ought to go right to those on why you think they are indeed constitutional. I'm struggling with that because I can find no authority as to constitutional law for either of your contentions. Indeed, the R. Castro de Mercado v. Mukasey case seems to bonk your family unity theory right in the head. So I'm interested. Let's start with that. You claim that there is a constitutional fundamental right to family unity, although as a father of six children, I may agree with you that families are really, really important. What constitutional authority can you cite anywhere that states that that is a fundamental constitutional right? Your Honor, I think that there's a couple of angles to answering this question. The first is I believe the government's brief muddied the waters a little bit when it's when it implies that our argument is a direct substantive due process challenge based on the fundamental right of family unity. Rather, it is a due process and separation of powers challenge based on the fact that there is no judicial review of an agency determination that implicates this fundamental right. Now, going back to your initial question, which is where does fundamental right come from, we believe it's established in such cases as Moore from the Supreme Court. Now, in Moore, the case was about whether a family could stay united in one residence under a zoning ordinance. That's an entirely different issue, is it not? It's a different issue, Your Honor, but I would contend that the family unity interest implicated here is even stronger because we're talking about separating a family across borders. How do you deal with Castro de Mercado? That's our case. We're bound by Castro de Mercado. We are a three-judge panel. That's our jurisdiction. That's our controlling law. What authority do we have to ignore that? I would agree, Your Honor, except that Castro de Mercado itself is in tension with the previous three-judge opinion of the Supreme Court. Okay. Well, I understand that's your view. How do we as a three-judge panel resolve what you believe to be a tension among our cases? You simply follow the earliest panel decision on point, Your Honor, and that would be Cabrera-Alvarez in this case. Cabrera-Alvarez. The earliest as opposed to the latest? Correct, Your Honor, and that's, I believe, the Hart v. Massonari case, explaining that whenever you have conflicting three-judge panel opinions, you go with the earliest one because the later conflicting panel had no authority to override the first three-judge panel to begin with. And what if, again, just hypothetically, if Castro de Mercado is right on point and the others, you feel, are distinguishable, then you don't have that conflict that you're talking about, do you? That's correct, Your Honor. So I would ask you then, how do you distinguish Castro de Mercado? Your Honor, Castro de Mercado did rule that there is no jurisdiction over the type of judicial review challenge that we imposed, and there's no way around that fact. Okay. So given that fact, that really does great damage to one of your claims. And your second colorable claim is what? The second colorable claim, first of all, Your Honor, I would say it only does great damage if you don't believe it. No, no, I respect that. But I'm going to let you end on that. Let's say that. What's your second claim, and what basis do you have for that? The second claim, and I believe actually the one that should be considered first, is that the immigration judge, his evaluation of the evidence, because he did not fairly and usually evaluate the evidence, that in itself was a due process violation. Now, I'd like to dispose of another government straw man right now, in that we are not asking this Court to reweigh the evidence. We are not asking this Court to review the immigration judge's weighing of the evidence. This is not a case where the immigration judge says, I have six facts favoring a hardship determination. I have four facts in the record disfavoring a hardship determination. The four facts overwhelm the six facts. I'm saying no hardship determination. That is not what happened here. What happened here is the immigration judge looked at the record. He listed a number of facts that supported a hardship determination. But then he went outside the record to his own preconceived ideas about Mexico and about the petitioner's family and used those to trump the evidence in the record. Well, but there's more than that, isn't there? In this particular case, the petitioners specifically indicated that if their request for cancellation or removal was denied, they would take their children with them to Mexico, which seems to me to just completely undercut the argument that there would be family separation. Your Honor, there's two responses to that. The first one is that the whole premise of all the questions from the immigration judge was that they would take their children to Mexico. It never did the petitioners. Oh, they confirmed that. Sorry? They confirmed that. They confirmed that that's what they would do. So if they did that, you know, even if you disagree with the approach of the IJ, doesn't that kind of tie it in a little bow and indicate that the argument about family unity, although an important issue, really goes away in this case, doesn't it, because the family wouldn't be separated? Your Honor, I thought you were asking the question in the context of the due process challenge, which is separate from the family unity challenge. It kind of all comes together, doesn't it, because it seems to me you're asking us to treat as a constitutional issue the fact that the IJ went outside the record, as you contend, to bring in his own preconceptions. How does that become a constitutional claim? I mean, we have many able lawyers, some less so, who want us to have jurisdiction in these very troubling family cases. And so they say that everything is a constitutional, colorable claim. Why is what you just said about the IJ's conduct a constitutional claim? You may have some evidentiary claim or something else, but why is that a constitutional claim? Judge Smith, the argument based on the failure to fairly and neutrally evaluate the evidence is independent from the family unity claim. It's based on the decisions of this Court in Colmenar and in Martinez-Rosas. In Martinez-Rosas and in Colmenar, the Court said that if you don't afford a full and fair hearing, that is a due process violation. That's why I'm trying to distinguish. And so in your argument with respect to full and fair evaluation, the evidence is that the IJ speculated as to the availability of work for this man, who's basically a woodworking carpenter, and the ability of the children to learn Spanish, particularly the older child. Those are the two things in which you say the IJ engaged in improper speculation. Correct, and there's a third basis for improper speculation. That was the ability to support the grandparents after the petitioners would be deported. But that really goes to the first one, which is to say his ability to find work if he goes to Mexico. I think that the two are linked, Your Honor. I agree. And that is why, again, it would be a separate thing if the immigration judge looked at the record to glean facts from that record to outweigh all of the record facts. I have to say my trouble with that argument is not that it is illogical. It's an entirely logical argument, and it's obvious that to some degree the IJ is speculating as to the degree as to which as to how difficult it will be for him to find work in Mexico and as to how difficult it will or will not be for the children to learn Spanish at the ages that they now have, particularly the older of the two children. On the other hand, if that is a due process violation, we are going to set aside virtually all of these hardship determinations because there is inevitably going to be involved this level of speculation as to what's the difference between your life here in the United States and what your life will be if you are removed to Mexico or removed to whatever the particular country is. The reach of your argument is enormous. Judge Fletcher, I see that I have That's okay. You can answer. If you're over time, that's our problem and not yours. Thank you, Judge Fletcher. I actually respectfully disagree as to the scope of the argument, and the reason why is because I believe in most immigration judges have at least one or two record facts that they say, this is the one that trumps all the record facts that oppose my view. In this case, what we have is outright speculation, and I don't believe that allowing a due process claim here would open the floodgates to an unmanageable amount of review of these immigration cases. Okay. We've got your argument, I think, quite well in hand. Let's hear from the government. We'll give you a chance to respond. Thank you. Good morning once again, Your Honors. Katherine Clark on behalf of the Attorney General. The petitioners do not articulate constitutional claims, either with respect to family unity or with respect to the immigration judge's findings regarding the male petitioner's ability to find work in Mexico. Demarcado disposes of the family unity claim, and in any case, petitioners do claim in the record that they would not be separated from their United States citizens. It doesn't change my answer to the case as a whole, but it depends on how you define family. Yes, it appears that they're going to be taking their children with them to Mexico, but they're leaving behind their parents, and I assume the parents are part of the family. Even if that is the case, the Demarcado case disposes of this. The reason I mentioned that the children will be going to Mexico is because petitioners in their brief and today pressed the argument that that is not clear from their record, but both petitioners' written applications for cancellation of removal in the administrative record at 222 and 636 indicate that the children, the individuals to whom they claim hardship, will be going to Mexico with them, and so there is a basis for that in the record. And in any event, of course, Demarcado does dispose of that. It cites exactly the cases that petitioners use as the basis for their claim that family unity is constitutionally protected in the final footnote to that case, and it holds that those cases do not provide a right to family unity in immigration proceedings. I'm quibbling, but in the text, the opinion in... I guess I'm now reading Lourdes' case by Judge O'Scanlan, which I think pretty much settles it. I'm sorry, it's Demarcado's, the same case, I'm sorry. It's the same case. He says, setting aside the question of family unity, and footnote 5 looks to me like dictum. On the other hand, it may be correct. I'm not sure it's a holding. In either case, it does address petitioners' argument directly, and it cites more, and that is the case that petitioners, of course, cited today. And to move on to the argument with regard to female petitioners' ability to find work in Mexico, the immigration judge was simply using common sense knowledge and evaluating petitioners' testimony. This is a pure factual finding that the court does not have jurisdiction to review. The immigration judge inquired whether a petitioner had asked in Mexico about opportunities for jobs there, and the petitioner testified that he had not. And in the briefs, the petitioners now claim that the male petitioner would have had to return to Mexico in order to inquire, but the male petitioner did not bring that up in the testimony. He did not say, oh, I did not inquire because I would have had to return to Mexico in order to do so. He simply said, no, he had not inquired. And for that reason, the immigration judge was not speculating here, even if speculation would somehow be a due process violation, because the immigration judge was stating simply that petitioner did not meet his burden to show that he could not find jobs in Mexico because he had not inquired, and it was his burden to prove that he would not be able to find those jobs. So he should have inquired, per the immigration judge's questioning. And he did not adequately explain why he didn't do so. And my final point is that it is not clear how Cabrera-Alvarez would conflict with Demarcado. In Cabrera-Alvarez, the immigration judge was held to have given sufficient consideration to the best interests of the child and was held to have weighed the harm to relevant relatives against normal harms to relatives upon deportation or removal. And the immigration judge here did exactly the same thing. There's no evidence that the immigration judge was not neutral. The immigration judge repeatedly mentioned that, yes, there would be some hardships involved here, and that is completely consistent with Cabrera-Alvarez, regardless of whatever interaction there may or may not be between Cabrera-Alvarez and Demarcado. The court denied en banc a hearing in Demarcado, and if it had wanted to correct a perceived conflict with Cabrera-Alvarez, it could have granted en banc. And unless the court has any further questions, counsel. Well, I'm not sure it's a question so much as an observation. And you're certainly limited in what you can say regarding your communications with your client. You've given a fine argument. Speaking only for myself, we don't conference in advance. I don't see how you could possibly lose this case because despite the best efforts and extraordinary efforts of petitioners' counsel, there's just not much to work with here as a matter of law. But I take a step back, and I have to say I've been on this court now for seven years, and I've had surely hundreds, maybe over thousands of immigration cases because we have so many of them. And this, I think, is the new title holder for the most senseless result possible. We have here not only two petitioners who were brought to the United States, one as a baby, one as a young child, so clearly not acts of their own volition, who have apparently no marks on their record. The I.J. himself vented by observing they came into the system apparently through some unethical acts of a notorio who caused them to file asylum, which was a senseless application. But once they're in the system, the system grinds on. And here we are now facing their possible removal that will do damage not only to their lives but to their two minor United States citizen children, to their parents, including at least one United States citizen. At the end of the day, it's hard for me to understand how the government or how DHS believes the interests of the United States are served by proceeding with this matter. This may be the third case in my time where I step back and say, wait a minute. Isn't there room for prosecutorial discretion here? Because the best interests of the country, I sincerely believe, are not being served by proceeding with this matter. Now, as a judge, speaking only for myself, I don't think I have the authority to do anything. And so I anticipate voting when we confer in a few minutes to deny the petition. But I have to say that it's difficult for me to understand why the government wants to do this. And I would urge you to consult with your client to see if, in fact, the government thinks the best interests of the United States will be served by the disruption of this family and the removal of these petitioners. Like I said, there's not a question there. It's an observation. And I don't expect you to talk to us about what your discussions with DHS involve. But this is really pretty far out there. Respondent does acknowledge sympathetic factors in this case and would not deny that in any case. After having acknowledged them, are you going to do anything about them? Because I cannot reveal communications that may or may not have occurred between myself or other individuals with the government, between myself or anyone else and my client. I cannot discuss that. May I just add my voice as well? We are bound by the law. We have to follow what the Congress indicated here. But this, in many cases, are heartbreaking. They're absolutely heartbreaking. If there were any way for us to have equitable jurisdiction to do something, I'm sure many of us would love to do so. But may I add my voice to indicate that we hope that you will pass on to the DHS the hope that some prosecutorial discretion will be exercised in some of these cases where you have people who have been in the United States for so long. I mean, it is ‑‑ I think of Inspector Giver and Le Miserable when I see some of these cases where they're just bound and determined they're going to move forward. Or perhaps in the Merchant of Venice, you have our measure for measure. We're going to follow what we're going to follow. Now, we don't have any choice. We are bound by our oath and by the law. But some of these cases are horrific, and I think this is one of them. But the law is the law, and we have to do what we have to do. But please pass on the message, if you will, from at least two of us, and I think Judge Fletcher. I'm about to say something. You're going to say something as well. Well, this is carrying coals to Newcastle, given what my two eloquent colleagues have already communicated. But I will say that I feel exactly the same way. These people have worked hard. They have paid their taxes. They've been contributing members of their community. They are supporting other members of their family who, once these people go to Mexico, will not be supported in the same way. The possibility of public charges then being resulting from their inability now to support them. The only reason they're in the system is that they were misled by the notarios, the notarios that the government seems to be either unwilling or incapable of controlling, exploiting these people by promising something that they know they cannot deliver. Once they deliver them into the system, the system then acts as we now have. This seems to me an extraordinarily bad use of United States government resources, even though the government has the right to do this, and even though, and I'll communicate my own view on the merits of the case just as my colleagues do, this is a slam-dunk winner for you under law. There's no question about that. But, you know, there's some bad guys out there. Why do you go after the bad guys? You have limited resources. You have limited prosecutorial resources. And to choose these people for this treatment seems to me at least a questionable use of resources. Thank you. And, of course, the respondent, again, does acknowledge the sympathetic factors here. Nonetheless, the law states that the court is not in a position to... Yeah. Now, I've not consulted with my colleagues on this point, and we may or may not do this, but I'm considering recommending to my colleagues that we withdraw submission of this case for a period of 60 days to allow the government to decide whether it wishes to pursue further this case. But I do so saying that I think I know the answer is when we get to the merits, I mean, you win. There it is. Does the government want to win this case? That's the question. The issue that I must address there is that this case has been in mediation previously, and that is reflected on the docket, the public docket. And we're still here? We are. Well, you told us the box has been checked, but you haven't told us anything that reflects very well on the judgment of DHS or whoever is calling the shots. I cannot. Again, I cannot comment on consultations between our office and our clients. Tell the secretary to find out what the Duke ultimately did in measure for measure and consider doing likewise. Thank you. Thank you. Would you like a moment to respond? How often do you have judges tell you you're bound to lose? I said anyway, but I will endeavor to change, change your minds in the remaining. In defense of the immigration judges, treatment of the evidence in our views, the government attorney contends that what he really did was seize on the fact that Mr. Martini Silva had failed to inquire about conditions in Mexico. However, first of all, there's nothing in the record, nothing in the immigration judge's oral decision which would indicate that. Secondly, Mr. Martini Silva did not give his reasons because, frankly, he was never asked. I mean, this is a man who is not a sophisticated court practitioner. This is a man who was responding in Spanish as opposed to English. This is a man who was suckered into raising his head based on the advice of a notario that leads him to this trouble. Absolutely, Judge Fletcher. I don't think it's fair to have expected Mr. Martini Silva to answer questions that weren't even posed to him in the hearing. Okay. Beyond that, I would also say that the government actually had a lengthy recess between when Mr. Martini Silva was first examined and then when they cross-examined him and then examined Mr. Martini Silva's father. And I think that if the government had had evidence, had evidence put into the record which could actually establish that there was carpentry work in Mexico, they could have done so. They could have either brought an expert or submitted some kind of literature or something to indicate there was record evidence that would support their case. The fact of the matter is the only record evidence is Mr. Martini Silva's testimony and the immigration judge should not have disregarded it based on his own preconceived idea that there must be carpentry work in Mexico. Thank you very much. Before we submit this case, I'd like to say something on behalf of the panel, which is and I say this whenever we get a case like this, the Aiken Gump firm has taken this pro bono and this is now not a comment on the merits of the case, this is rather a statement that we are very grateful for the pro bono people that do take these cases. They are well, the briefing has been done very well, the argument has been done very well and we understand that this has been done, as it were, pro bono for free and we thank you. Okay. Martini Silva versus McKenzie or now Holder submitted for decision. The next case on the argument calendar and for those of you who might have come in a moment later, we've skipped over and we'll return to Hermes versus Holder and Flores versus Holder because the attorneys were held up in the rain and the traffic for those two cases. The next case, Tolson versus Astro.
judges: Fletcher W. , Clifton, Smith M.